**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ANGELIQUE SWIEDA,**

        **Plaintiff,**

-vs-                                             **Case No.6:06-cv-1248-Orl-19KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**
_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT:**

      This cause came on for consideration without oral argument on the Complaint originally filed by Thomas Swieda (Swieda), seeking review of the final decision of the Commissioner of Social Security denying his claim for social security benefits. Doc. No. 1. After Swieda's death, his wife, Angelique Swieda, was substituted as the party plaintiff. Doc. No. 23.

      The Commissioner answered the Complaint and filed a certified copy of the record before the Social Security Administration (SSA). Doc. Nos. 16, 17. The parties have filed memoranda of law in support of their positions. Doc. Nos. 20, 21. This matter has been referred to me for issuance of a Report and Recommendation.

**I.    PROCEDURAL HISTORY.**

In 2003, Swieda applied for disability benefits under the Federal Old Age, Survivors and Disability Insurance Programs (OASDI), 42 U.S.C. § 401 *et seq*. (sometimes referred to herein as the Act).  He alleged that he became disabled on November 7, 2001. R. 66-68.  Swieda's application was denied initially and on reconsideration. R. 29-35

Swieda requested a hearing before an administrative law judge (ALJ).  R. 36.  An ALJ held a hearing on March 20, 2006.  Swieda, accompanied by a representative who was not an attorney, testified at the hearing. Casey Vass, a vocational expert (VE), also testified.  R. 271-94.

After considering the testimony and the medical evidence presented, the ALJ determined that Swieda was insured under OASDI through December 31, 2006.  R. 16.  The ALJ found that although Swieda had worked selling real estate, he had not engaged in substantial gainful activity since the alleged onset date of his disability. R. 18.

The ALJ concluded that the medical evidence showed that Swieda had degenerative disc disease, which was a severe impairment.  R. 18.  The ALJ concluded that Swieda's other medical conditions were not severe, and this finding is not challenged here.  R. 18-19.  The ALJ further concluded that Swieda's impairments did not meet or equal any of the impairments listed in the applicable social security

regulations (the Listings).[1]  R. 20.

The ALJ found that Swieda had the following residual functional capacity (RFC):

> [T]he claimant has the residual functional capacity to lift and/or carry 10 pounds; he can stand and/or walk two to four hours in an eight-hour workday; he can sit six hours in an eight-hour workday; he needs to sit and/or stand periodically to relieve discomfort; he can only occasionally climb ramps and stairs; he can never climb ladders, ropes, and scaffolds; he can only occasionally stoop and crouch; he can never kneel and crawl; and he needs to avoid concentrated exposure to environmental hazards.  Additionally, he experiences pain, which is noticeable but he can stay on task as long as the tasks are within the physical limitations as described.

R. 20.

In reaching this conclusion, the ALJ gave little weight to the opinion of Dr. Hynes, one of Swieda's treating physicians, and Dr. Brigety, a reviewing physician.  R. 21-22.  He gave significant weight to the opinion of Dr. Puestow, a reviewing physician.  R. 22.  The ALJ also found that Swieda's testimony about the limitations arising from his impairments was not totally credible. R. 20.

Because Swieda's past relevant work exceeds Swieda's RFC, the ALJ concluded that Swieda could not return to his past relevant work.  R. 22.  Relying on the testimony of the VE, and considering the Medical-Vocational Guidelines (the Grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ concluded that Swieda could work in jobs that were

---

[1] The Code of Federal Regulations "contains a Listing of Impairments specifying almost every sort of medical problem ('impairment') from which a person can suffer, sorted into general categories." *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278 (11th Cir. 2004); 20 C.F.R. Part 404, Subpt. P, App. 1.

available in the national economy. R. 23. Therefore, the ALJ concluded that Swieda was not disabled. R. 23-24.

Swieda requested review of the ALJ's decision. R. 12. On June 15, 2006, the Appeals Council issued a decision finding no basis to review the ALJ's decision. R. 8-10. Swieda timely sought review of this decision by this Court. Doc. No. 1.

**II.     JURISDICTION.**

Because Plaintiff has exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

**III.    STATEMENT OF FACTS.**

The facts of record are adequately stated in the ALJ's decision and in the parties' memoranda. Accordingly, I will only summarize the pertinent facts to protect the plaintiff's privacy.

Swieda was 42 years old on the alleged disability onset date. R. 274. Swieda previously worked managing stores and as a salesperson. R. 275. He stopped work in November 2001 after he injured his back. R. 275-76; *see also* R. 149-51.

H. El Kommos, M.D., an orthopedist, began treating Swieda shortly after his injury and continued to treat him regularly through at least October 2002. R. 188-97. As of November 15, 2001, Swieda reported back pain, and Dr. Kommos observed that Swieda had poor flexibility and muscle spasms. R. 196-97. Nevertheless, Swieda could heel and toe walk, had no sensory loss, and a straight-leg raising test was negative. R. 196. On December 3, 2001, Dr. Kommos authorized Swieda to return to light duty work with no pushing, pulling, bending or squatting and no prolonged sitting, standing or walking. R. 195.

An MRI taken in January 2002, revealed that Swieda had degenerative disc disease and bulging discs in his lumbar and sacral spine. R. 194. After reviewing this test result, Dr. Kommos again opined that Swieda could perform light duty work with the restrictions previously stated despite his ongoing back pain. R. 193. In March 2002, Dr. Kommos noted that Swieda's "symptoms are a little out [of] proportion to the operative findings." R. 192.

Swieda underwent a course of physical therapy. R. 166-78. The therapist indicated on April 18, 2002, that Swieda had moderate complaints of pain and difficulty with a poor prognosis for improvement. R. 168.

Dr. Kommos ordered a functional capacity evaluation (FCE), which was conducted on July 12, 2002. R. 181-87. After testing, the physical therapist opined that Swieda was capable of performing sedentary work. R. 181. Dr. Kommos concurred and released Swieda to work at the level indicated by the therapist. Dr. Kommos concluded that Swieda had reached maximum medical improvement (MMI) with only a 1% to 2% disability. R. 189.

Thereafter, Swieda continued to complain of pain. R. 188. Epidural injections were not effective. R. 207-17.

On December 24, 2002, Richard Hynes, M.D., examined Swieda. Swieda complained of pain radiating into his left thigh. Dr. Hynes noted tenderness on palpation and significant back spasm, but straight-leg raising tests were negative. Swieda had limitation in range of motion in his back. R. 254. Dr. Hynes' impression was "[m]echanical back pain with intermittent left radicular complaint secondary to posterior protrusion at L4-5 and L5-S1 with associated degenerative disk disease." R. 255. Dr.

Hynes indicated that Swieda should not return to work because he had not reached MMI. R. 255.

On March 10, 2003, Swieda was examined by Anthony F. Afong, M.D. Swieda complained of lower back pain worsened with activity. R. 222. Upon examination, Dr. Afong confirmed restricted range of motion in Swieda's back. Swieda was able to walk without difficulty, do a deep knee bend, and had 5/5 strength in his extremities. R. 223. Dr. Afong's impression was that Swieda had low back pain syndrome with symptomatic spondylosis and degenerative disk disease with left lower extremity radicular symptoms. R. 223. On November 20, 2003, Dr. Afong completed a questionnaire in which he stated that Swieda could not squat or walk on his toes or heels. He had some limitation of motion in his back, but good grip strength and fine dexterity. R. 131.

On May 22, 2003, Paul J. Maluso, M.D., examined Swieda. Swieda complained of pain across his lumbar spine and pins and needles with numbness down his left thigh. Dr. Maluso did not observe any spasm, and a straight-leg raising test was negative. Dr. Maluso did note that Swieda had limitation in range of motion in his spine. His impression was that Swieda had degenerative disk disease of the lumbar spine and bulging discs in the lumbar and sacral spine. R. 205. Dr. Maluso concurred with Dr. Kommos' assessment that Swieda could work within the FCE. R. 206.

Dr. Hynes examined Swieda again in June 2003. Based on review of a CT diskogram, Dr. Hynes' impression was that Swieda had a herniated disk. Dr. Hynes recommended surgery and found that Swieda could not work. R. 251-52. The surgery was not performed because Swieda could not afford it. R. 278. Dr. Hynes saw Swieda again in September 2003. His report states, without explanation, that Swieda had not

yet reached MMI.  R. 250.

Dr. Hynes completed a Medical Opinion Re: Ability to Do Work-Related Activities (Physical).  He opined that Swieda could lift and carry less than 10 pounds.  He could stand, walk or sit about 2 hours a day.  R. 145.  He could need to change positions at will every 10 to 15 minutes.  R. 145-46.  Dr. Hynes also indicated that Swieda might have to lie down at unpredictable intervals on a daily or weekly basis.  He could occasionally twist and stoop (bend) but never climb ladders.  R. 146.  He could reach, push and pull but not handle, finger or feel.  R. 147.  He had to avoid even moderate exposure to extreme cold and heat, wetness and humidity.  He would be expected to miss work more than three times a month.  R. 147.  All of these limitations arose from the pain associated with Swieda's herniated disc and degenerative disc disease.  R. 145-47.

On July 24, 2003, Reuben E. Brigety, M.D., completed an RFC assessment after reviewing Swieda's records.  R. 21, 228-35.  Dr. Brigety opined that Swieda could lift and carry 10 pounds occasionally and 5 pounds frequently.  He could stand or walk at least 2 hours and sit about 6 hours in a workday.  R. 229.  He could occasionally climb, stoop and crouch.  R. 230.

In January 2004, Eric Puestow, M.D., also completed an RFC assessment after reviewing Swieda's records.  R. 259-66.  He opined that Swieda could lift or carry up to 10 pounds. He could stand or walk 2 to 4 hours a day and sit about 6 hours a day.  R. 260.  He could only occasionally engage in postural activities, but never climb ladders, ropes or scaffolds.  R. 261.

On October 18, 2005, Dr. Hynes prepared a second Medical Opinion Re: Ability to Do Work-Related Activities (Physical). R. 268-70. He revised his earlier opinion, without explanation for the change. He opined that Swieda could lift and carry 20 pounds occasionally and 10 pounds frequently. He could stand, walk or sit about 4 hours a day. R. 268. He would need to change positions at will every 15 minutes. R. 268-69. Dr. Hynes also indicated that Swieda might have to lie down at unpredictable intervals, but only "once or twice." He could occasionally stoop (bend) and climb stairs, but never twist or climb ladders. R. 269. He could reach, push and pull but not handle, finger or feel. R. 270. He had to avoid concentrated exposure to extreme cold and heat, wetness and humidity and avoid even moderate exposure to hazards. He would be expected to miss work more than three times a month. R. 270.

At the ALJ's hearing, Swieda testified that he had lower back pain that radiated down his left leg. He used a walking stick occasionally. R. 281. He went to a pain management clinic every three months to monitor his medication. R. 278.

Swieda attempted to return to work as a real estate agent in January 2005, but he was unable to perform this job successfully due to back pain. R. 276. He would frequently lie down or rest in a recliner during the day and at night. He had difficulty sleeping due to pain. R. 282-83. He could not walk long distances. R. 283-84. He could not bend to pick something up. R. 284. He could walk up stairs using the railing as support. He could drive an automobile, but he had to shift positions frequently. R. 284-85. His family helped him with personal hygiene, such as tying his shoes. R. 285.

With respect to Swieda's functional capacity, the ALJ asked the VE to consider a younger individual with a high school education and work history. The person could lift

only 10 pounds. He could stand and walk 2 to 4 hours a day and sit for at least 6 hours a day, but he would need the ability to sit or stand periodically. He could not climb ladders, ropes or scaffolds, and he could not kneel or crawl. He could occasionally climb ramps and stairs, and stoop and crouch. He would need to avoid concentrated exposure to hazardous work sites. R. 292-93. The VE opined that this individual could not return to Swieda's past relevant work. However, he could perform sedentary, unskilled jobs available in the national economy as follows: dispatcher; telephone surveyor; and, information clerk. R. 293.

## IV.    STANDARD OF REVIEW.

To be entitled to disability benefits under OASDI, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A. A "physical or mental impairment" under the terms of the Act is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). In a case seeking disability benefits under OASDI, the claimant also must show that he or she became disabled before his or her insured status expired in order to be entitled to disability benefits. 42 U.S.C. § 423(c)(1); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry that must be followed in determining whether a claimant is entitled to benefits. In sum, an ALJ must apply the following criteria, in sequence:

> (1) Is the claimant presently unemployed?
>
> (2) Is the claimant's impairment severe?
>
> (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
>
> (4) Is the claimant unable to perform his or her former occupation?
>
> (5) Is the claimant unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a)(4). An affirmative answer to any of the above questions leads to either the next question, or, on steps three and five, to a finding of disability. A negative answer leads to a finding of "not disabled." *See, e.g.*, *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1987).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)). However, "the burden temporarily shifts at step five to the Commissioner[,] . . . [who] must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform." *Id*. at 1278 n.2 (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

The SSA's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer*, 395 F.3d at 1210. "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982)(internal quotations omitted).

The court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Where the SSA's decision is supported by substantial evidence, the court will affirm, even if the court finds that the proof preponderates against the decision. *Dyer*, 395 F.3d at 1210. The court may not reweigh the evidence or substitute its own judgment. *Id*.

While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Therefore, the court will reverse if the SSA incorrectly applied the law, or if the decision fails to provide the court with sufficient reasoning to determine that the SSA properly applied the law. *Keeton v. Dep't of Health & Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991)).

When reviewing a final decision issued by the SSA, the court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## V.   ANALYSIS.

Swieda asserts three interconnected bases supporting reversal. He contends that the ALJ's RFC assessment was incorrect because the ALJ did not give proper weight to the opinion of Dr. Hynes, a treating physician, relying instead on the opinion of a reviewing physician. He further asserts that if the ALJ had properly assessed the functional limitations arising from his pain, he would have found Dr. Hynes' opinion to be correct. These are the only issues before the Court.[2]

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2)). Good cause has been found "where the doctor[s'] opinion[s] [were] not bolstered by the evidence, . . . where the evidence supported a contrary finding[,] . . . [or] where the doctors' opinions were conclusory or inconsistent with their own medical records." *Id.* (internal citations omitted). The ALJ must articulate the reasons for giving lesser weight to the opinion of a treating physician. *Id.*

In the present case, two of Swieda's treating physicians differed in their opinions regarding the functional limitations arising from Swieda's impairments. Dr. Kommos, who treated Swieda from shortly after his injury through October 2002, opined that Swieda could do sedentary work. This opinion was supported not only by Dr. Kommos' examinations of Swieda but also by a functional capacity assessment prepared by a physical therapist after testing Swieda. Dr. Maluso, a consulting physician, concurred

---

[2] The parties were advised that issues not specifically raised would be waived. Doc. No 18.

with the FCE and Dr. Kommos' assessment. Dr. Puestow, a reviewing physician, also reached essentially the same conclusions.[3]

Dr. Hynes examined Swieda once on December 24, 2002, a second time in June 2003, and a third time in September 2003. His medical findings did not significantly differ from those of Drs. Kommos and Maluso except that he believed that Swieda had not reached maximum medical improvement. Dr. Hynes opined that Swieda could perform less than a full range of sedentary activity.

Because there were different opinions from two treating physicians, good cause necessarily existed to support the ALJ's determination of which opinion should be accorded great weight. The ALJ relied upon the opinion of Dr. Kommos because he had examined Swieda on more occasions and his opinion was consistent with other evidence in the record. The ALJ's reasoning is supported by substantial evidence.

Moreover, the ALJ did not entirely reject Dr. Hynes' opinion. While the FCE indicated that Swieda could perform sedentary work, the ALJ found that additional functional limitations existed. These included the need for a sit/stand option, postural limitations and environmental limitations, all of which were part of Dr. Hynes' functional capacity assessment.

Swieda also asserts that the ALJ erred in assessing the functional limitations arising from pain. He specifically contends, in this respect, that the ALJ erred in rejecting

---

[3] Swieda argues that Dr. Puestow's opinion cannot provide substantial evidence to support the ALJ's RFC determination because he did not examine Swieda. While the ALJ gave significant weight to Dr. Puestow's decision, he also accepted the functional capacity assessment of the physical therapist which supported Dr. Kommos' and Dr. Maluso's RFC assessments. As such, this is not a case in which the ALJ relied solely on the opinion of a reviewing physician.

the opinion of Dr. Brigety, a reviewing physician, regarding such limitations.

The ALJ's decision reflects that he relied on the correct legal standard in assessing Swieda's complaints of pain. R. 20 ("After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible."). The ALJ articulated specific reasons, supported by the record, for his conclusions. He carefully reviewed the medical evidence which, as discussed above, supported a finding that Swieda could perform sedentary work. He indicated that he rejected Dr. Brigety's assessment because it was not consistent with this medical evidence. Furthermore, he noted that Swieda was working, albeit not at a substantial gainful activity level, despite his impairments. Accordingly, the ALJ satisfied his burden of articulating explicit and adequate reasons for finding Swieda's testimony about the functional limitations arising from pain to be not entirely credible. *See Foote v. Chater*, 67 F.3d 1533, 1561-62 (11th Cir. 1995).

## VI.   RECOMMENDATION.

For the reasons stated herein, I respectfully recommend that the decision of the Commissioner be **AFFIRMED**. I further recommend that the Court direct the Clerk of

Court to enter judgment consistent with its decision on this Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within **ten (10) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended this 7th day of January 2008.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE